KATIRIA ORTIZ, MARY MOE whose initials are K.O., JANE DOE, whose initials are I.P., a minor by her Guardian ad Litem KATIRIA ORTIZ, K.O. and KATIRIA ORTIZ, K.O., Individually,

Plaintiffs,

v.

TOWNSHIP OF WOODBRIDGE, its agents, servants and/or employees, DETECTIVE JUAN CARLOS BONILLA, JR., in his official and individual capacity, DETECTIVE BRIAN JAREMCZAK, in his official and individual capacity, DETECTIVE SHAYNE BODNAR, in his official and individual capacity, DETECTIVE PARTRICK HARRIS, in his official and individual capacity, DETECTIVE NICOLE HUBNER, in her official and individual capacity, PATROLMAN JEIAN RASTEGARPANAH, in his official and individual capacity, CHIEF LAW ENFORCEMENT OFFICER CAPTAIN SCOTT KUZMA, ROY HOPPOCK in his official supervisory and individual capacity, DEPUTY POLICE DIRECTOR JOSEPH NISKY, in his official supervisory and individual capacity, POLICE DIRECTOR ROBERT HUBNER, in his official supervisory and individual capacity, et al,

Defendants.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CIVIL ACTION No: 2:19-cv-14139

---

# BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS, TOWNSHIP OF WOODBRIDGE, CAPTAIN SCOTT KUZMA, POLICE DIRECTOR ROBERT HUBNER AND DEPUTY POLICE DIRECTOR JOSEPH NISKY

---

WEINER LAW GROUP LLP
629 Parsippany Road, P.O. Box 438
Parsippany, New Jersey 07054
Phone: (973) 403-1100  Fax: (973) 403-0010

*Weiner Law Group LLP*

*Attorneys at Law*

629 Parsippany Road
P. O. Box 438
Parsippany, NJ
07054-0438

973-403-1100

Of Counsel and
On the Brief:  Alan J. Baratz, Esq.
Attorney I.D. No: 031451982

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................... i

TABLE OF AUTHORITIES ............................................................................ ii

PRELIMINARY STATEMENT OF FACTS ................................................... 1

PROCEDURAL HISTORY .............................................................................. 4

ARGUMENT ................................................................................................... 8

    POINT I ................................................................................................... 8

        THE TOWNSHIP OF WOODBRIDGE, ITS CHIEF LAW
        ENFORCEMENT OFFICER, AND ITS POLICE DIRECTOR AND
        DEPUTY DIRECTOR ARE ENTITLED TO SUMMARY
        JDUGMENT, AND TO THE DISMISSAL OF PLAINTIFF'S
        THIRD AMENDED COMPLAINT WITH PREJUDICE. ................ 8

    POINT II .................................................................................................. 11

        PLAINTIFF CANNOT ESTABLISH ANY CONSTITUTIONAL
        OR STATE LAW CLAIM AS PLED AGAINST THE PUBLIC
        ENTITY DEFENDANT, TOWNSHIP OF WOODBRIDGE ......... 11

    POINT III ............................................................................................... 21

        PLAINTIFF CANNOT ESTABLISH LIABILITY OF
        WOODBRIDGE TOWNSHIP'S CHIEF LAW ENFORCEMENT
        OFFICER, POLICE DIRECTOR OR DEPUTY POLICE
        DIRECTOR UNDER ANY THEORY ALLEGED IN HER THIRD
        AMENDED COMPLAINT. ........................................................... 21

CONCLUSION ............................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

A.M. ex rel J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.,
    372 F. 3d 572, 586 (3rd. Cir. 2004) ....................................................23

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242, 248 (1986) ..............................................................8, 9

Andrews v. City of Philadelphia,
    895 F. 2d. 1469, 1480 (3d. Cir. 1986) ...........................................14

Armstrong v. Sherman,
    N. 09-716, 2010 U.S. Dist. LEXIS 55616, at *15 (D.N.J. June 4, 2010) ...........11

Baker v. Monroe Township,
    50 F. 3d. 1186, 1190-91 (3rd. Cir. 1995) ...............................................23

Bielevicz v.Dubinion,
    915 F. 2d at 850 .....................................................................13

Borough of Saddle River v. 66 E. Annendale, LLC,
    216 N.J. 115, 144 (2013) ..............................................................16

C.H. ex. Rel. Z.H. v. Olivia,
    226 F. 3d 198, 202 (3d. Cir. 2000) ...................................................24

Carter v. The City of Philadelphia,
    181 F.3d 339, 357 (Third Circuit 1999) .........................................15, 16

Celotex Corp. v. Catrett,
    477 U.S. 317, 330 (1986) ............................................................8, 9

Chapman v. New Jersey,
    No. 08-4130, 2009 U.S. Dist. LEXIS 75720, at *7 (D.N.J. August 25, 2009)...11

Denis v. City of Newark,
    307 N.J. Super 304 (App. Div. 1998) ................................................................19

Di Cosla v. Kay,
    91 N.J. 159, 173 (1982)....................................................................................18

Garcia v. County of Bucks, PA,
    155 F. Supp. 2d 259, 268 (E.D. PA 2001) ......................................................15

Hedges v. Musco,
    204 F.3d 109, 122 n.12 (ed. Cir. 2000)...........................................................11

Kadetsky v. Egg Harbor Township Board of Education,
    164 F. Supp. 2d 425, 432 (D.N.J. 2001)..........................................................15

Landrigan v. Cellotex Corp.,
    127 N.J. 404, 414 (1992) .................................................................................16

Marino v. Indus. Crating Co.,
    358 F.3d 241, 247 (3d Cir. 2004) .......................................................................9

Monell v. Dep't. of Soc. Servs.,
    436 U.S. 658 (1978)....................................................... 3, 6, 7, 12, 13, 14, 15, 22

Parkell v. Danberg,
    833 F. 3d 313, 330 (3d. Cir. 2016)...................................................................23

Piecknick v. Pa.,
    36 F. 3d 1250, 1255-56 (3d. Cir. 1994) ...........................................................12

Podobnik v. U.S. Postal Serv.,
    409 F.3d 584, 594 (3d Cir. 2005) .......................................................................9

Polzo v. County of Essex,
    196 N.J. 569, 583 (2008)..................................................................................16

Popow v. City of Margate,
    475 F. Supp. 1237, 1243 (D.N.J. 1979).......................................................12, 15

Saldana v. Kmart Corp.,
   260 F.3d 228, 232 (3d Cir. 2001)........................................................................9

Santiago v. Warminster Twp.,
   629 F. 3d. 121, 130 (3d. Cir. 2010) ...............................................................23

Simonson v. Formisano,
   2021 WL 2221328 at *5 (D.N.J. June 1, 2021).................................................19

Skevofilax v. Quigley,
   586 F. Supp. 532, 544 (D.N.J. 1984) ..............................................................13

Stoneking v. Bradford Area Sch. Dist.,
   882 F. 2d 720, 725 (3d. Cir. 1989) .................................................................23

Torres v. Kuzniasz,
   936 F. Supp. 1201, 1206 (D.N.J. 1996)...........................................................13

Trafton v. City of Woodbury,
   799 F. Supp. 2d 417, 443 (D.N.J. 2011)..........................................................11

West v. Atkins,
   487 U.S. 42, 48 (1988) ...................................................................................12

Williams v. Borough of West Chester,
   871 F. 2d. 458 (3rd. Cir. 1989) .........................................................................7

**STATUTES**

N.J.S.A. 59:2-10...................................................................................................20

**OTHER AUTHORITIES**

42 U.S.C. Section 1983.................................................................. 3, 11, 12, 13, 23

iv

Civil Rights Act ...................................................................................11

New Jersey Civil Rights Act ("NJCRA") ..............................................11

New Jersey Evidence Rule 703 .............................................................16

New Jersey Tort Claims Act...................................................................20

**RULES**

Fed. R. Civ. P. 56 ..............................................................................3, 6

Federal Rule of Civil Procedure 56(a)....................................................8

## PRELIMINARY STATEMENT OF FACTS

While the Township of Woodbridge and its individually named defendant officers involved, who were members its Police Department's Special Investigations Unit, wholly refute all of her relevant contentions, plaintiff Katiria Ortiz describes the subject civil action as involving police brutality and misconduct perpetrated upon her on June 21, 2018 at her residence located at 124 Adamecs Way in South Amboy, New Jersey (See plaintiff's certified answers to Interrogatory No. 2, Exhibit "C" to Baratz Declaration).  Plaintiff claims that defendants, Detectives Bonilla and Jaremczak that day wrongfully and illegally entered her townhouse without a proper search warrant, and that while she was naked in her third floor bathroom with the shower running prepared to take a shower, they broke the door of her bathroom, entering it without permission, that Detective Bonilla struck her in the face with a weapon, knocking her unconscious, that when she regained consciousness the said defendants, who were positioned between her legs, verbally berated her, and refused her getting dressed or receiving medical assistance, and that they then pulled her off the floor and forcibly threw her onto her bed placing her in fear for her safety and her life.  (See plaintiff's certified answer to Interrogatory No. 2, Exhibit "C" to Baratz Declaration).

Plaintiff has not referenced in discovery reliance upon any prior incidents of alleged misconduct by any Woodbridge Township law enforcement officer in support of her claim.  (See plaintiff's certified answer to Interrogatory No. 18, Exhibit "C" to

Baratz Declaration).  Other than her aforementioned version of the event as referenced above, plaintiff has offered no facts to support any claim that the alleged violation of her constitutional rights occurred as a result of any official policy of the Township or unofficial custom of its police officers.    (See plaintiff's certified answer to Interrogatory No. 22, Exhibit "C" to Baratz Declaration).    Moreover, plaintiff's proposed liability expert, retired Chief Oswald, does not proffer that the conduct of the Township's detectives at issue resulted from any improper official policy of the Township of Woodbridge, or from any unofficial custom, pattern or practice of members of the Woodbridge Township Police Department. (See Oswald Report dated June 2, 2023 at pages 31 – 33, Exhibit "F" to Baratz Declaration).

The only opinions offered by plaintiff's expert potentially giving rise to entity liability of the Township of Woodbridge its Chief Law Enforcement Officer, Police Director or Deputy Director for the alleged constitutional violations by its named defendant officers address their supervision and training.  However, it is clear that as a matter of law plaintiff cannot establish supervisory liability of the Township's Chief Law Enforcement Officer, defendant, Captain Kuzma, or of the agency executive of the Woodbridge Police Department, Director Robert Hubner or his Deputy Director, defendant, Joseph Nisky.  It is also clear that notwithstanding her expert's citation to the seminal United States Supreme Court decision in City of Canton, Ohio v. Harris, plaintiff cannot establish entity liability of the Township of Woodbridge under the high

2

standard of required proof in claims against public entities under 42 U.S.C. Section 1983 based on alleged training deficiencies.  In fact, the clear and undisputed record reveals that the Township of Woodbridge through its policymaker actually provided training on all relevant issues to its law enforcement personnel, and plaintiff's proposed expert failed to cite any impropriety or inadequacy in the relevant policies and procedures of the Woodbridge Township Police Department upon which its member officers were trained.

Given the absence of any facts from which it could be determined that there was a policy, custom, pattern, or practice within Woodbridge Township Police Department, or an inadequacy of police training amounting to deliberate indifference on the part of the Township's policymakers, potentially giving rise to entity liability of the Township under the doctrine of Monell v. Dep't. of Soc. Servs., 436 U.S. 658 (1978), and because plaintiff also as a matter of law cannot establish supervisory liability of defendants, Captain Scott Kuzma, Police Director Robert Hubner, or Deputy Police Director Joseph Nisky, the Township of Woodbridge, its Chief Law Enforcement Officer, its Police Director and its Deputy Police Director are entitled to summary judgment in accordance with Fed. R. Civ. P. 56, and to the dismissal of all claims as pled against them in plaintiff's Third Amended Complaint with prejudice.

## **PROCEDURAL HISTORY**

In plaintiff's original Complaint [ECF 1] filed June 21, 2019, in addition to the Township of Woodbridge, five (5) individually named detectives and one (1) patrolman of its Police Department, plaintiff named as defendant Chief Law Enforcement Officer Captain Hoppock, as well as Police Director Robert Hubner and Deputy Police Director Joseph Nisky. It was subsequently represented to plaintiff's counsel that Woodbridge Township's Chief Law Enforcement Officer at all times relevant to the June 21, 2018 incident at issue was Captain Scott Kuzma, and that former Captain Roy Hoppock had in fact retired as of December 31, 2017. As a result, when plaintiff's First Amended Complaint [ECF 12] was filed on October 14, 2019, the caption of that amended pleading identifying the Township's Chief Law Enforcement Officer read "CHIEF LAW ENFORCEMENT OFFICER CAPTAIN SCOTT KUZMA [ROY HOPPOCK]."

Notwithstanding the apparent dismissal as to the previously identified Chief Law Enforcement Officer, Roy Hoppock, in the subsequent versions of plaintiff's pleading, including the Third Amended Complaint [ECF 53] filed September 15, 2021, plaintiff continued to identify that individual as "CHIEF LAW ENFORCEMENT OFFICER, CAPTAIN SCOTT KUZMA, ROY HOPPOCK," with singular, not plural descriptions. Accordingly, in the Answer to Third Party Complaint filed on behalf of

4

the movants herein, Township of Woodbridge, Captain Scott Kuzma, Police Director Robert Hubner and Deputy Police Director Joseph Nisky, [ECF 54], it was expressly referenced at page 2 of that responsive pleading "that all claims pled against the named defendant, Roy Hoppock were voluntarily dismissed when defendant, Scott Kuzma was identified as the Township's Chief Law Enforcement Officer at all relevant times."

In discovery sought by plaintiff, the Township of Woodbridge served answers to plaintiff's original Interrogatories and answers to plaintiff's Revised Interrogatories certified by Chief Law Enforcement Officer, Captain Scott Kuzma. In addition to the depositions of the named defendant officers of the Woodbridge Township Police Department, plaintiff's counsel elicited the deposition testimony of a Woodbridge Township Training Officer, Patrolman Craig Polhamus. Depositions were not requested by plaintiff's counsel of defendants, Captain Scott Kuzma, Police Director Robert Hubner, or Deputy Police Director Joseph Nisky.

Plaintiff did disclose a proposed expert in law enforcement policy, procedures and professional standards, Troy E. Oswald, and all defendants have also disclosed a proposed police procedures expert addressing all claims asserted by plaintiff in the matter. However, the conflicting opinions of plaintiff's and defendants' proposed experts are of no consequence to the merits of the instant dispositive motion, and to the clear entitlement of defendants, Township of Woodbridge, Captain Scott Kuzma, Police Director Robert Hubner and Deputy Police Director Joseph Nisky to the

dismissal of all claims with prejudice pursuant to Fed. R. Civ. P. 56 based on facts, which are undisputed, the proposed opinions of plaintiff's expert and prevailing case law.

All factual assertions supporting any causes of action pled against the Township of Woodbridge, its Chief Law Enforcement Officer, Police Director or Deputy Director in plaintiff's Third Amended Complaint are memorialized in paragraphs 73 through 76 thereof in which she alleges that the conduct complained of on the part of the Township's officers involved in execution of the subject search warrant and her arrest was "done pursuant to the pre-existing and ongoing deliberately indifferent official custom, practice, decision, policy, training and supervision of" the movant's herein, who she criticizes for negligent hiring, training and supervision, and for failing to investigate citizen complaints of excessive force.

In plaintiff's Third Amended Complaint she asserts her federal constitutional claims against the Township of Woodbridge, its Chief Law Enforcement Officer, Police Director and Deputy Director under the <u>Monell</u> doctrine in the Sixth Count. In the First Count plaintiff pleads violations of the Fourth and Fourteenth Amendments to the U.S. Constitution grounded in allegations of excessive force against the Woodbridge Township officers involved in execution of the subject search warrant and her arrest, <u>and surprisingly also against the Township's Chief Law Enforcement Officer, Police Director and Deputy Police Director.</u> In the Second Count plaintiff

6

pleads Fourteenth Amendment violations grounded in alleged denial of medical care against the involved Township officers, <u>and surprisingly also against Police Director Hubner</u>.  In the Seventh Count plaintiff pleads what appear to be negligent hiring, training and supervision claims against the Township of Woodbridge grounded in violation of her "common law rights as guaranteed by the laws and Constitution of the State of New Jersey."  All other remaining counts of plaintiff's Third Amended Complaint memorialize causes of action asserted against only those Woodbridge Township police officers involved in execution of the subject search warrant and her arrest, which officers are named individually as defendants in the action.

The Township of Woodbridge, its Chief Law Enforcement Officer, Police Director and Deputy Police Director  furthermore incorporate herein all arguments advanced by the named defendant Woodbridge Township officers supporting their entitlement also to summary judgment, since if it is determined that plaintiff suffered no constitutional injury at the hands of any involved Woodbridge Township officer, she certainly cannot maintain a <u>Monell</u> liability claim against the Township, its CLEO or its civilian policymakers per the doctrine of <u>Williams v. Borough of West Chester</u>, 871 F. 2d. 458 (3rd. Cir. 1989).

# ARGUMENT

## POINT I

**THE TOWNSHIP OF WOODBRIDGE, ITS CHIEF LAW ENFORCEMENT OFFICER, AND ITS POLICE DIRECTOR AND DEPUTY DIRECTOR ARE ENTITLED TO SUMMARY JDUGMENT, AND TO THE DISMISSAL OF PLAINTIFF'S THIRD AMENDED COMPLAINT WITH PREJUDICE.**

Federal Rule of Civil Procedure 56(a) provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).

A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material for purposes of a summary judgment motion if a dispute over that fact might affect the outcome of the suit under the governing law. Id. Substantive law controls the inquiry into which facts are material. Id.

In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-

moving party's evidence is to be believed and all justifiable inferences are to be drawn in his favor. Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson 477 U.S. at 255). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. Celotex, 477 U.S. at 327.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) . See also Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex, 477 U.S. at 325) (the nonmovant must "present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue."). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Anderson, 477 U.S. at 252.

Upon application of the foregoing standards, and by virtue of the undisputed material facts and prevailing case law referenced below, the Township of Woodbridge, Captain Scott Kuzma, Police Director Robert Hubner and Deputy Police Director Joseph Nisky are entitled to the grant of a summary judgment, and to the dismissal of all claims pled in plaintiff's Third Amended Complaint, with prejudice.

## POINT II

### PLAINTIFF CANNOT ESTABLISH ANY CONSTITUTIONAL OR STATE LAW CLAIM AS PLED AGAINST THE PUBLIC ENTITY DEFENDANT, TOWNSHIP OF WOODBRIDGE

All allegations as pled against the Township of Woodbridge in plaintiff's Third Amended Complaint are memorialized in Counts Six and Seven thereof. Plaintiff therein references alleged violations of the United States Constitution in the Sixth Count, and a generalized violation of the Constitution of the State of New Jersey in the Seventh Count.

The New Jersey Civil Rights Act ("NJCRA") was modeled after the federal Civil Rights Act ("CRA"), and is interpreted to analogously. Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 443 (D.N.J. 2011) (finding that the District of New Jersey has "repeatedly interpreted [the NJCRA] analogously to Section 1983"). NJCRA state law claims mirror 42 U.S.C. Section 1983 claims, and courts typically "address [] [NJCRA] in tandem with his federal causes of action." Id.; see also Chapman v. New Jersey, No. 08-4130, 2009 U.S. Dist. LEXIS 75720, at *7 (D.N.J. August 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart. . ."); Armstrong v. Sherman, N. 09-716, 2010 U.S. Dist. LEXIS 55616, at *15 (D.N.J. June 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of analog to Section 1983 . . . ."); see generally Hedges v. Musco, 204 F.3d 109, 122 n.12 (ed. Cir. 2000) (concluding that New Jersey's constitutional provisions concerning search and

seizures are interpreted analogously to the Fourth Amendment.)    Accordingly,

analysis of all constitutional claims asserted by plaintiff are premised on 42 U.S.C.

Section 1983, which provides in relevant part:

> "Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory . . . subjects, or causes to be
> subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in
> an action at law, suit in equity, or other proper proceeding for redress . . ."

Section 1983 provides a remedy for state action aimed at depriving persons of rights

protected by the federal Constitution and state laws. Popow v. City of Margate, 475 F.

Supp. 1237, 1243 (D.N.J. 1979).  To state a claim for relief under Section 1983,

plaintiff must first allege the violation of a right secured by the Constitution or laws of

the United States, and, second, that the alleged deprivation was committed or caused

by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988);

Piecknick v. Pa., 36 F. 3d 1250, 1255-56 (3d. Cir. 1994).

As concerns municipal liability for alleged constitutional violations by law

enforcement officers, however, the U.S. Supreme Court over four (4) decades ago

made it clear that plaintiffs may not depend on a theory of *respondeat superior*, but

rather are required to prove that the municipality supported the violation of rights

complained of.  Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 690 (1978). The liability

of a public entity under Section 1983 only attaches when "execution of a government's

12

policy or custom, whether made by its lawmakers or by those whose edicts or acts may
fairly be said to represent official policy, inflicts the injury." Id. at 694.

A policy is created when a decision-maker with authority "issues an
official proclamation, policy, or edict." Bielevicz v.Dubinion, 915 F. 2d at 850.
A course of conduct may be considered a custom when the practice of municipal
officials, though not authorized by state law, is "so permanent and well-settled"
that it constitutes law. Monell, supra, 436 U.S. at 691; see Torres v. Kuzniasz,
936 F. Supp. 1201, 1206 (D.N.J. 1996). A policy cannot be established by a
plaintiff's naked allegation. Moreover, the official policy or unofficial custom
claimed by any plaintiff in an effort to establish municipal liability under 42
U.S.C. Section 1983 must be specifically identified. Skevofilax v. Quigley, 586
F. Supp. 532, 544 (D.N.J. 1984). None of these legal predicates have been
established by plaintiff in discovery.

In order to establish custom and practice of law enforcement representing
a permanent and well-settled course of conduct, plaintiff must establish some
facts showing knowledge and acquiescence by the public entity employer by
virtue of its policymakers being aware of unlawful conduct of its employees, and
that its procedure of reprimand was so inadequate that it ratified future
occurrences of such unlawful conduct. Torres v. Kuzniasz, 936 F. Supp. 1201,
1206 (D.N.J. 1996); see Bielevicz, 915 F. 2d. at 854. Plaintiff herein has taken

13

no discovery concerning complaints of prior unlawful conduct by Woodbridge Township police officers, the Township's investigation of which was somehow inadequate. Clearly, plaintiff's proposed expert on law enforcement policy, procedures and professional standards makes no such claim among any of the conclusions that he reached in his report. (See Oswald report dated June 2, 2023 at pp 31 – 33, attached as Exhibit "F" to Baratz Declaration). In order to establish <u>Monell</u> liability of a public entity for the alleged conduct of its law enforcement officers by virtue of custom, pattern, or practice, as plaintiff herein alleges, facts must be developed demonstrating that the practices of the entity's law enforcement officers were "so permanent and well-settled as to virtually constitute law." <u>Andrews v. City of Philadelphia</u>, 895 F. 2d. 1469, 1480 (3d. Cir. 1986). Plaintiff can offer no evidence whatsoever that the Township of Woodbridge enforced a policy, or otherwise made decisions that caused the alleged violation of her rights, or that there was a persistent and widespread practice among Woodbridge Township law enforcement of violating individuals rights, such as to constitute a custom or policy of the Township.

Indeed, inadequate training can form the basis of entity liability for alleged constitutional violations by law enforcement under the <u>Monell</u> doctrine. However, it is clear from all discovery accomplished concerning training that plaintiff cannot establish such entity liability of the Township of Woodbridge as

14

a matter of law.

When a failure to train is alleged as a <u>Monell</u> deficiency, a plaintiff must show under Section 1983 that an entity's failure amounts to "deliberate indifference to persons with whom these employees will come in contact with." <u>Carter v. The City of Philadelphia</u>, 181 F.3d 339, 357 (Third Circuit 1999). Moreover, it must be shown that the training at issue was so inadequate as to make the alleged misconduct almost inevitable. <u>Popow v. City of Margate</u>, 476 F. Supp., 1237 (D.N.J. 1979). Liability of a municipal defendant under Section 1983 for an alleged failure to train its employees is only established if the "policymaker failed to train its employees in deliberate indifference to the potential for violation of the constitutional rights of those with whom the employees come into contact." <u>Kadetsky v. Egg Harbor Township Board of Education</u>, 164 F. Supp. 2d 425, 432 (D.N.J. 2001); <u>Garcia v. County of Bucks, PA</u>, 155 F. Supp. 2d 259, 268 (E.D. PA 2001).

Plaintiff's proposed expert at pp 32 – 33 of his report, attached as Exhibit "F" to the Baratz Declaration, offers criticism of the training of members of the Woodbridge Police Department; however, his criticisms do not relate to the officers' training on arrest procedures or use of force, which are the issues that plaintiff raises as alleged constitutional violations in the subject action. Rather, retired Chief Oswald simply opines that Sergeant Bodnar was not trained for supervision "in narcotics," and that Sergeant Bodnar and Detective Bonilla "appeared to have" no training on the bail

15

reform directive.  Not only are those criticisms irrelevant to the constitutional claims

asserted by plaintiff herein, but also the criticism of Sergeant Bodnar's training on

"supervision in narcotics" is a wholly inadmissible net opinion.  New Jersey Evidence

Rule 703 forbids the admission into evidence of an expert's conclusions that are not

supported by factual evidence.  Polzo v. County of Essex, 196 N.J. 569, 583 (2008).

Expert witnesses must state with specificity facts supporting their opinions, because

mere conclusions of experts are wholly insufficient.  Borough of Saddle River v. 66 E.

Annendale, LLC, 216 N.J. 115, 144 (2013).  The net opinion rule prohibits experts

from offering opinions at trial, unless they first identify the factual basis for their

conclusions, and then explain their methodology.  Landrigan v. Cellotex Corp., 127

N.J. 404, 414 (1992).  Herein, plaintiff's expert has offered nothing to support his

conclusion that the training received by Sergeant Bodnar was inadequate in any respect

relevant to the plaintiff's claims in the case.

Beyond the issue of her expert's inadmissible net opinion, plaintiff cannot point

to any facts revealed through exhaustive discovery from which she can meet the

standard of "deliberate indifference" acknowledged by our Court of Appeals in Carter

v. City of Philadelphia.  Both former Chief Law Enforcement Officer, Captain Kuzma,

in his sworn Certification (Exhibit "H" to Baratz Declaration), and Training Officer

Craig Polhamus in his sworn deposition testimony (Exhibit "G" to Baratz Declaration

at p. 31, l. 22 – p. 43, l. 19), have explained under oath the process and procedure by

which all relevant training on use of force, search and seizure, and arrest procedures was received by Woodbridge Township law enforcement at all relevant times. Moreover, with the Township's answers to plaintiff's Interrogatories certified by Captain Kuzma (Exhibit "D" to Baratz Declaration) plaintiff received in discovery the Woodbridge Township Police Department Policies & Procedures on its Holding Facility, Arrest Procedures, Search & Seizure, and Use of Force, and with its answers to plaintiff's Revised Interrogatories also certified by Captain Kuzma (Exhibit "E" to Baratz Declaration) plaintiff received in discovery the Woodbridge Township Police Department Polices & Procedures on Fitness for Duty and Internal Affairs. Additionally, in discovery the Township of Woodbridge provided to plaintiff with its answers to plaintiff's Interrogatories (Exhibit D" to Baratz Declaration) Training Breakdowns for its officers covering the period of 2014 through 2019, Bates stamped WPD TRAINING 1 – 15. The Township also documented in discovery the training received on bail reform by defendant, Detective Bonilla, who signed the Complaint Warrant memorializing all charges proffered against plaintiff following her subject arrest.

Plaintiff's proposed expert, who simply offered in his report inadmissible net opinions criticizing the training received by Sergeant Bodnar and Detective Bonilla, never referenced any of the established Policies & Procedures of the Woodbridge Township Police Department upon which all of its member officers were trained, or

17

any of the other documents produced by the Township in discovery, including its relevant Training Breakdowns, or the supplied documentation of Detective Bonilla's training on bail reform.

It becomes clear based on the arguments referenced above and the undisputed facts in the record that plaintiff as a matter of law cannot establish entity liability of the Township of Woodbridge grounded in any alleged constitutional violations by its law enforcement officers, who were involved in the execution of a search warrant and plaintiff's arrest at her residence on June 21, 2018.  To the extent that her allegations as memorialized in the Seventh Count of her Third Amended Complaint are interpreted to memorialize state law claims of negligent hiring or retention by the Township of Woodbridge, such state law claims must also fail as a matter of law.

To establish negligent hiring, the plaintiff must show:  (1) that the employer "knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons" and (2) "that, through the negligence of the employer in hiring the employee, the latter's incompetence, unfitness or dangerous characteristics proximately caused the injury."  Di Cosla v. Kay, 91 N.J. 159, 173 (1982).  Negligent supervision, retention or training claims must meet the same standard.  See Id.  Thus, plaintiff must prove that (1) an employer knew or had reason to know that the failure to supervise, train, or fire an employee in a certain way would

18

create a risk of harm and (2) that risk of harm materialized and causes a plaintiff's damages. Herein, plaintiff cannot point to any evidence in the record suggesting that the law enforcement officers involved in execution of the subject search warrant and her arrest should not have been hired by the Township of Woodbridge, or that the Township knew that it had failed to supervise, train or terminate any of its involved officers creating a foreseeable risk that any would do harm. Specifically, there are no facts available to plaintiff in the record that could support state law claims of negligent retention or supervision on the part of the Township as were addressed in <u>Denis v. City of Newark</u>, 307 N.J. Super 304 (App. Div. 1998) in which admissible evidence existed that the City of Newark Police Department knew or should have known of the dangerous propensities of one of its officers based on three (3) violent incidents in the officer's personnel file, two (2) of which predated a claimed use of excessive force in that case. <u>Denis v. City of Newark</u>, 307 N.J. Super 304, 313 (App. Div. 1998). Similarly, no facts are herein presented similar to those considered by the District Court in 2021 in <u>Simonson v. Formisano</u> in which the Court found that plaintiff had stated a claim for negligent retention and supervision where the police department had retained the involved officer despite awareness of his deteriorating mental state, and allowed him to retain his service weapon that was ultimately used to shoot plaintiff and a second victim. <u>Simonson v. Formisano</u>, 2021 WL 2221328 at *5 (D.N.J. June 1, 2021).

Finally, it is clear that the Township of Woodbridge enjoys absolute immunity

pursuant to N.J.S.A. 59:2-10 for any alleged conduct of its officers "constituting a crime, actual fraud, actual malice, or willful misconduct." Plaintiff's claims of assault and battery, sexual assault and intentional infliction of emotional distress can certainly not be chargeable to the Township of Woodbridge in *respondeat superior* given that express provision of absolute immunity afforded public entities of our State in the New Jersey Tort Claims Act.

## POINT III

**PLAINTIFF CANNOT ESTABLISH LIABILITY OF WOODBRIDGE TOWNSHIP'S CHIEF LAW ENFORCEMENT OFFICER, POLICE DIRECTOR OR DEPUTY POLICE DIRECTOR UNDER ANY THEORY ALLEGED IN HER THIRD AMENDED COMPLAINT.**

Even a liberal reading of the remaining counts of plaintiff's Third Amended Complaint will reveal that all allegations against the Township's Chief Law Enforcement Officer, defendant Scott Kuzma, its Police Director, defendant, Robert Hubner, and its Deputy Police Director, defendant, Joseph Nisky are asserted only in the First, Second and Sixth Counts thereof. Inexplicably, in the First Count plaintiff's counsel chose to include Captain Kuzma, Director Hubner, and Deputy Director Nisky as targets of her claims grounded in alleged excessive force by those Woodbridge Township police officers, who executed a search warrant at her residence and were involved in her arrest on June 21, 2018 in South Amboy, New Jersey. There is no proof that the Township's Chief Law Enforcement Officer, defendant, Captain Kuzma, had any operational involvement whatsoever in the execution of the subject search warrant, or in plaintiff's resultant arrest. In fact, Captain Kuzma has certified under oath to the contrary, as memorialized at paragraph 7 of his August 29, 2024 Certification attached as Exhibit "H" to the accompanying Baratz Declaration. Captain Kuzma has also certified that Director Hubner and Deputy Director Nisky held civilian positions within the Police Department, such that they were not law

enforcement officers in 2018. (Kuzma Certification at paragraph 6, Exhibit "H" to Baratz Declaration). There is certainly no proof of any relevant involvement by the Township's civilian Police Director or Deputy Director supporting the allegations directed against them in the First Count of plaintiff's Third Amended Complaint.

There is simply no explanation for plaintiff adding Police Director Hubner as a named defendant in the Second Count of her Third Amended Complaint alleging denial of medical care. He had no relevant involvement in execution of the search warrant or in plaintiff's arrest, and plaintiff can point to no facts, nor any inference from the facts, reflecting his involvement in any claimed denial of her medical care.

Defendants, Captain Kuzma, Director Hubner and Deputy Director Nisky also cannot be reached in liability for the claims that plaintiff asserts under the Monell doctrine in the Sixth Count of her Third Amended Complaint. Initially it must be noted that there is absolutely no proof that Captain Kuzma, Director Hubner, or Deputy Director Nisky had any supervisory responsibility over the named defendant detectives and police officer, who were assigned to the Woodbridge Township Police Department's Special Investigations Unit, and were involved in execution of the subject search warrant, and plaintiff's arrest. It is established, to the contrary, that Captain Brian Murphy in June of 2018 was the Supervisor of that Special Investigations Unit. (See paragraph 8 of August 29, 2024 Certification of Scott Kuzma, Exhibit "H" to Baratz Declaration). Nonetheless, to state a claim of

supervisory liability under 42 U.S.C. Section 1983, a plaintiff must prove that the alleged tortfeasor was "directed to violate" the plaintiff's constitutional rights by his supervisors. Santiago v. Warminster Twp., 629 F. 3d. 121, 130 (3d. Cir. 2010).

Supervisory liability absolutely requires some affirmative conduct by the supervisor, such as a supervisor's implementation or maintenance of a policy, practice, or custom that caused the plaintiff constitutional harm. Parkell v. Danberg, 833 F. 3d 313, 330 (3d. Cir. 2016); Santiago v. Warminster Township, 629 F. 3d 121, 129 n.5 (3d. Cir. 2010). Hence, there are two potential theories of supervisory liability. See A.M. ex rel J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F. 3d 572, 586 (3rd. Cir. 2004). Under the first theory, a defendant may be sued as policy maker "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, custom or practice which directly caused [the] constitutional harm.'" Id. (quoting Stoneking v. Bradford Area Sch. Dist., 882 F. 2d 720, 725 (3d. Cir. 1989)). The second theory of liability provides that a supervisor may be personally liable under Section 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations. See Baker v. Monroe Township, 50 F. 3d. 1186, 1190-91 (3rd. Cir. 1995). Knowledge in a "failure to supervise" claim must consist of either "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents." C.H. ex. Rel. Z.H. v. Olivia, 226 F. 3d 198, 202

(3d. Cir. 2000).   Simply stated, there are no facts presented in the record from which

plaintiff can establish supervisory liability of the Township's Chief Law Enforcement

Officer, Police Director or Deputy Police Director under either of the two (2) potential

theories referenced above.

## CONCLUSION

For all of the foregoing reasons, defendants, Township of Woodbridge, Captain Scott Kuzma, Police Director Robert Hubner and Deputy Police Director Joseph Nisky request that summary judgment be granted in their favor, and that the plaintiff's Third Amended Complaint as pled against them in its entirety be dismissed with prejudice.

Respectfully submitted,
WEINER LAW GROUP LLP
Attorneys for defendants, Township of Woodbridge,
Captain Scott Kuzma, Police Director Robert
Hubner and Deputy Police Director Joseph Nisky

Dated: Sept. 4, 2024          By: _____

Alan J. Baratz
A Member of the Firm

25